Case No. 17-57-67 and 17-58-44 First Horizon National Corporation et al. v. Houston Casualty Company et al. Oral argument to be 15 minutes for plaintiffs and 15 minutes to be shared by defendants. Mr. Tatum for the appellate. Good morning, may it please the court. I'm attorney Tatum of King & Spaulding on behalf of the appellant's First Hennessy Bank. This case is an appeal from a summary judgment order that improperly dismissed of a $75 million insurance claim. Today, I know there are several issues before the court. I plan to focus on the three central errors that the district court made. First, the court erred in holding that the government's April 29, 2014 email, which was sent just seven months before it completed the False Claims Act investigation, was a demand for monetary relief and thus a claim under the insurance policy at issue. Second, the court erred in holding that the bank's May 2014 notice letter sent to the insurers was deficient as notice of an expected claim. Third, even if this court affirms the district court's holding that the April email was a claim, a written demand, the court erred in holding that the bank's May notice sent just three weeks later to the insurers did not satisfy the minimal requirements for reporting notice of a claim as opposed to notice of an expected claim. If this court agrees and reverses on this third narrow issue, it will moot the need for this court to decide the first three errors. Now, turning first to the, I guess, most central issue and the error the court made, it found that this April email that I referred to was a demand for monetary relief. Now, to begin, claim in the coverage section at issue here, which is the banker's E&O coverage, does not include coverage for a mere government investigation. Claim requires an actual proceeding, litigation, or written demand. And as we've said in our briefing, the policy does not define the word demand, and under Tennessee law it must be given its ordinary understanding, which is a document that forcefully seeks something, here money, and threatens consequences for failure to comply. In your honors, at least two of the insurer's witnesses agreed with this definition in their depositions. In looking at the government documents that are in the record, the only one that satisfies this definition of demand is the DOJ's December 2014 presentation to the bank. In it, it demanded that the bank make a monetary offer or else the DOJ plan to file suit against the bank within a matter of weeks. And it told it that at the very end of the presentation. In contrast, if you look at the April email seven months earlier, it doesn't contain any kind of forceful statement, nor does it threaten a consequence. And importantly, if you look at the closing of the April email, the DOJ states that it would, quote, welcome further discussion and information sharing, close quote. And given an ordinary meaning of demand, that is just not the stuff of a demand. What's your best theory that a written demand has to include a threat to sue? Well, if it doesn't include an express threat, it certainly has to imply it. And if you look... What's your best authority that that's what a written demand... Well, under the Herald Tennessee court decision, as well as Tata v. Nichols and others, you have to give an undefined word in a policy its ordinary meaning. And the ordinary meaning, when you look... The best authority is just the dictionary? Yeah, Cambridge dictionary. So you have no case law? Not for that specific. I mean, we've cited other cases. The SNL case. Isn't that kind of odd? I mean, these claims made policies have been around for a long, long time. And if that were the interpretation of what a written demand is, it seems odd to me that there wouldn't be any case law to that effect. There's certainly case law, Judge Griffin, that looks at the issue of what a written demand is. And we fully brief that. And most all... It's not in support of your interpretation that it requires the threat of a suit. I think that certainly the cases that we've cited support that decision. Yes, the SNL case supports that decision. The Warren case from the circuit supports the decision and really makes the analogy that a written demand is kind of the antithesis and mutually exclusive when a claimant is still evaluating its rights and remedies. And it's clear when you look here at the April email that the government is still evaluating its rights and remedies. And it does so for another seven months before it makes a demand. And when the DOJ wanted to make a demand, it certainly knew how to do so. And that's evidenced by the December deck presentation. In looking at the December presentation, which you argue is a demand, and trying to figure out how it's different from the earlier communications that you say are not demands, they're both in the context of settlement discussions. They both say that they haven't yet received authority to file suit. The only difference between one that you say is a demand and one that you say isn't a demand is that one of them says the investigation is substantially complete. Are there other significant differences between the earlier communications and the December presentation? Well, there are, Your Honor. We think, Judge McKeague, that you can look on the face of the April email. And, again, it's a fair reading of the April email. It's hard to even make a really credible argument. The word settlement offer is used in it, but there's no connection between settlement offer and $610 million. And the court— If they're making a settlement offer, I don't care how much, if they're making a settlement offer, what are they offering to settle? Why isn't that at least awfully closely akin to a demand for money? Well, the settlement offer is not a demand. Even the lead underwriter who underwrote this policy said, you know, a settlement offer is a lot looser than what's in the policy, which is a demand. Where's the demand, using that language, in the December presentation? Well, a couple things about the December DEC presentation. It goes through great detail to identify that the government is substantially complete with its investigation. It outlines what, theretofore, had not occurred, and that was to develop evidence on the knowledge prong of its False Claims Act under the statute. So it had been developing the evidence on that front, and it's clear in communications between the government and the bank between that time. But if you look at the very last couple pages of the December DEC, the government says— I mean, it doesn't use the word demand, but it says, unless we receive a meaningful settlement offer, we plan to sue within a matter of weeks. And they even give a deadline of the end of January. So their intention to sue was more imminent in December than, arguably, it was in April. So that means one is a demand and one isn't? It does. Amir, I mean, these claims made policies, Judge McKeague, insurers would be jumping up and down, and they do all the time, in other cases where they have something that doesn't meet the threshold of what a claim is in the policy. And there are lots of reasons why they don't want loose language in the claim definition. For example, an oral offer or a written offer, those things would start counting the clock on defense costs that would be covered under the policy, and they would have to cover things that were not sufficient enough to be a real demand. Insurers don't want to cover friendly, you know, things that have not matured enough where they would constitute something that's a forceful statement and seek something. And the policy has a written demand for monetary relief. Well, that's a real interesting twist. I mean, basically what the insurance companies say is that you guys were playing hide-the-ball here because you wanted to negotiate favorable renewal rates and avoid SEC disclosures, and only when you got by those two hurdles did you then say, oh, by the way, we have this claim. Your response is, geez, we're trying to do them a favor by not construing something as a claim because then it would have triggered the duty to defend. It would have started the bank right. If it were something less sufficient as a demand, they would have been obligated to start paying costs sooner. I mean, under their theory, they would owe the government, they would owe the bank millions of more dollars that they incurred in defending costs. But on the hide-the-ball, I mean, it's pretty incredible. If you think this tower, so the year that the insurers say that the bank should have given notice, 2012 policy year, and then you have the next one, 2013, in which the bank gave the notice, there are identical, the insurers are the same, the policy limits are identically the same. The bank would have had no reason here to hide the ball had it thought that it would have expected a claim after this May 2013 presentation. It had the same insurers. The policy limits in the 2012 policy year were then and today remain fully available, $75 million never used. And to argue an insurance company that's insuring a public company, they knew about this investigation back in 2012. We briefed this. They take applications every year, copious applications. Both the 2012 policy year and the 2013 policy year, they incorporated the bank's SEC filings. And going back to 2012, the bank had disclosed the DOJ investigation. So this kind of we're surprised is just a gotcha. And the timing of the May notice, May of 2014, I mean, there was another matter that had been settled with the insurers. We sent the notice in. The ink was not even dry on a prior settlement agreement with the insurers, and they didn't say anything about, gosh, why didn't you tell us about this any earlier? In fact, as you've seen in our briefing, the insurers sent a, or at least the lead insurers, sent a response letter. So you're claiming the demand is December, but you don't give the notice in connection with that demand until May of 2014. Correct. Why the five months there? Well, Your Honor, we gave a notice of an expected claim in May of 2014 after things had happened in the investigation, and we outlined this in our briefing. So once you get an actual demand, you don't think you have to notify them timely or whatever that means right away after that, because you've given a notice of circumstances a year earlier? We did have to give notice of the claim, Judge McKeegan. We, in fact, did that. So after this meeting with the DOJ in December of 2014, we gave notice, I think, the first or second week in February of 2015. In that notice, we told them, you know, this is the claim, here's the deck. So we did, in fact, give notice of the claim, but because we had... So the formal notice is February of 14th? 2015, Your Honor. 15th, after the December presentation? Deck. It's still within the policy period. But it's February 15th, not May 15th? February 15th, Your Honor. Okay, thank you. I see that I'm running out of time, unless there are other questions that Your Honors may have. I think there are not. Thank you. Thank you. I think I've reserved three minutes of time as well. Good morning, Your Honors. May it please the Court. Charlie Limley on behalf of the insurers and my colleague Mike Perlis is going to take the last two minutes to discuss a couple of issues. This Court should affirm the District Court's ruling granting summary judgment on behalf of the insurers because the District Court properly concluded that a claim was made in April 2014. The insurers argued that it was actually made even before that, but it was certainly made no later than April 2014. And First Horizon didn't provide notice of that claim until February 2015, which was long after the policy period and the applicable grace period expired. And just to walk through the dates just for a moment, just to make sure we're on the same page, the investigation began in April of 2012. May of 2013 is when the government made the presentation. Four government agencies brought in the General Counsel, Assistant General Counsel, Outside Counsel, 35-page PowerPoint presentation saying that the government had made findings that two-thirds of the claims that First Horizon submitted to the government were false claims and the damages could reach $1.2 billion and that it was going to continue to develop evidence and expand its investigation. April 2014 is when the government, according to First Horizon, First Horizon had made its responsive arguments and the government effectively rejected First Horizon's arguments and made a $610 million settlement demand. First Horizon's first notice was in May of 2014, the notice of circumstance that didn't disclose either the May 2013 presentation or the April 2014 settlement demand. The claim, according to First Horizon, was made in December 2014 when there was another presentation made by the DOJ that reiterated the findings from May 2013 and effectively threatened suit if First Horizon didn't respond to the April 2014 settlement demand. And First Horizon, after telling the insurers in January that no claim or demand had been made, in February 2015 finally provided notice of a claim. The policy defines claim very broadly and that's for the benefit of the insured because the claims are what triggers coverage and the insured is not entitled to coverage unless a claim is made. And this court is held with claims made policies. The union planner's case explains that the court doesn't have latitude to excuse noncompliance with notice requirements and that's because as the district court held, citing the Sigma case and others, the notice provision of a claims made policy is essential to coverage. It effectively defines the scope of coverage. And as this court and others have held, relaxing the notice requirement and allowing coverage to be triggered by broadly phrased innocuous or nonspecific statements like the ones in the May 2014 notice of circumstance would permit an unbargained for expansion of the policy and require the insurers to provide coverage that they didn't bargain to provide. And as the court held in the Sigma case, it would also create a perverse incentive to insurers to disguise potential claims so that they can make an argument for coverage in the future while not drawing attention to conduct that might increase future premiums or terminate coverage altogether, and that's exactly what happened here. First Horizon was not doing the insurers any favors. First Horizon gave notice, routinely gave notice of the most routine investigations. They gave notice of document subpoenas just in case. They gave notice of another investigation very similar to this one during the same policy period in which this one began. They made a strategic decision not to report this claim, this investigation, even after the May 2013 presentation where the government had already made findings that two-thirds of their claims were false and that the damages could be $1.2 billion. They didn't report that to the insurers. The district court found that that wasn't quite a claim, but that it nudged so close to the line that it certainly put them on notice that a claim could arise. Respectfully, we think the district court erred. We think that was a claim. We think that when the government comes to you and says, after a year of investigation, we've concluded that two-thirds of the claims you submitted to the government were false and that these damages over $1 billion, and the government in the presentation says, if the court agrees with our assertion that all of your claims were false, the damages could be even higher. Why is the government talking about the court accepting its assertion if it's not planning on suing? But it's a great point to compare the December 2014 presentation that First Horizon says is a claim to what happened in April 2014. April 2014, First Horizon pointed out that the government said we would welcome further discussion and information sharing. That sentence went on to say, but believe that for it to be productive, First Horizon should provide a counterproposal. Later that day, actually within an hour, in response to a question from First Horizon, the government said, I don't think we can push back the date by which we agree to file suit beyond June. So we need a response to see if talks will be productive. Can't hold off on filing suit for more than two months. December 2014, the bullet point, First Horizon says makes that a claim, makes it a demand, because it's a threat. There's one bullet point at the end of the presentation that says, after just having said you haven't responded to our April 2014 settlement offer, it says therefore we are currently seeking suit authority and plan to file suit unless we receive a serious settlement offer by the end of January 2015 that makes it clear that further discussions are likely to be productive. So it's saying we need a response to see if further talks will be productive, and we intend to sue you within two months. Intend to sue versus can't hold off on suing you. Same time period. There is just no legal support for the proposition that that minor difference in wording makes a difference in the outcome. So as First Horizon pointed out, we come to the notice that was given in the policy period in which the April 2014 demand was made. The May 2014 notice of circumstances. And the question is, was that notice sufficient notice of the claim that was made in April 2014? Or was it sufficient notice of anything that came before? May of 2014. If you look at that May 2014 notice of circumstance, it doesn't mention the May of 2013 presentation. It doesn't mention the April 2014 settlement demand that happened just a month before. This is May of 2014. The settlement demand was made in April 2014. The notice was given just after the insurers agreed to fund a settlement in the related FHFA case, and just after First Horizon had negotiated renewals of its policies. In fact, it not only doesn't report a claim, it says that a claim or demand might be made, which effectively forecloses the possibility that a claim had already been made. And if there were any doubt about that, there were three subsequent conference calls in June and October of 2014, and again in January of 2015. All three conference calls, First Horizon said, according to its Assistant General Counsel, we told them what we always told them, that no claim or demand had been made under the False Claims Act. And not only did First Horizon not tell the insurers about the $1.2 billion damages figure that had been articulated in May of 2013 and the $610 million settlement demand in April of 2014, in this May 2014 notice, what they said was, we are not able to estimate a range of reasonably possible loss due to significant uncertainties regarding any amount of enhanced damages that might be available or awarded. And it went on to say, we can tell you that the total amount of FHA loans that the bank made over a long period of time was $8.2 billion. What that's saying is, the best number we have is $8.2 billion. We don't have anything else. It forecloses even the possibility that there has been a specific damages figure given out a year before or that there was a $610 million settlement demand made the month before. First Horizon just cannot plausibly argue that the May 2014 notice of circumstances provided notice of the claim that was made just a month before. Your Honor, I'd like to just very briefly address our cross-appeal on the reverse bad faith claim. Excuse me. Two of the insurers filed a claim for reverse bad faith against First Horizon on the grounds that its action in pursuing coverage and in bringing this lawsuit was not in good faith, which means that it lacked good intent. And there is ample evidence of that. As I said before, First Horizon routinely gave notice of even the most routine investigations, and yet it made a strategic decision not to give notice even after receiving the May 2013 presentation with its findings of liability and damages. Even after the May 2014 settlement demand, First Horizon delayed giving any kind of notice until it had already settled the FHA claim with the insurers and received effectively another entire tower of insurance and negotiated its renewals. And even in that notice, it didn't even mention the May 2013 presentation or the April 2014 settlement demand. In fact, it very clearly suggested that no such thing could exist. By September of 2014, no later than September, it's undisputed, that First Horizon had determined that a material loss in this case was probable, that it was going to have to settle the claim, and it had prepared but not presented a settlement offer of up to $50 million.  There was a conference call in October 2014, one month later. It didn't tell the insurers that it had decided to settle the case. It told them what it always told them. No claim or demand has been made. It received the government's presentation in December, which it now says is clearly a claim. And yet in January 2015 on a conference call, it told the insurers what it always told them. No claim or demand had been made. This is interesting. February 20th, First Horizon sent an email to the insurers saying there's now been a claim. We'd like to schedule a conference call to tell you about the claim next Wednesday or Thursday, February 25th or 26th. It didn't say we'd like to talk to you as soon as possible. It says next Wednesday or Thursday, very specific. It turns out it issued its 10-K on Tuesday, February 24th, telling the markets that no claim is pending in this case. The following day, it told the insurers on February 27th, a claim had been made in December of 2014, months earlier, and gave the insurers less than 48 hours to agree to fund the $50 million settlement offer that it had prepared and decided to make the previous September. Then it went on to settle without consent and informed the insurers of the settlement by serving on them a copy of the complaint in this lawsuit. Respectfully, there is no good faith explanation for those actions. They were not trying to do the insurers a favor. They were trying to set the insurers up. It's a bad faith setup, trying to coerce the insurers into paying for a settlement without having the time to evaluate the situation. And respectfully, we think that the district court should have allowed a jury to decide the reverse bad faith case. And I see that my time is up. There are no questions? Thank you. There are not. Thank you, Counsel. Good morning, Your Honors. My name is Michael Perlis. I represent Altera American Insurance Company, and I thank you for your two minutes. I would like to say that, first, our view of the world is that the claim originated under the 2011-2012 policy when the Department of Justice and HUD started its investigation of First Horizon and started to send out CIDs to compel testimony and other information in connection with that investigation, setting forth in those CIDs the alleged wrongful acts which they believed First Horizon and First Tennessee had committed. The district court rejected that. We think we've set forth our basis for the appeal in our briefs, but I would like to move on to one thing that's specific. That is that the policy in the 2013-2014 period included among the definitions of claim a written request for interview. That was a defined claim. There were three written requests for interview in 2013 and 2014, one in August 2013, one in September 2013, and one in July 2014. Each of those written requests, they were in fact CIDs calling for the testimony of specific individuals, constituted a claim, yet no notice of that claim was given, and as my co-counsel has stated, that First Horizon repeatedly denied that any claim had been made. It's interesting that... Didn't a written request to interview have to be in connection with an administrative or regulatory proceeding? I don't believe so, Your Honor. I think you have to read that definition in a way that there's an administrative or regulatory proceeding, but there's a written request for interview. You wouldn't have a written request for interview in a proceeding. That's a far more informal approach. I think the problem with First Horizon... Which says, commenced by the filing of a notice of charges, written request to interview, formal investigative order, or similar document. Something has to have been commenced by those things, and what seems to be being commenced is the prior language of administrative or regulatory proceeding. Why is that wrong? It's wrong because, Your Honor, it talks about a formal investigative order or a similar document. That is never anything that is filed at all. Those documents are generally, for example, in the SEC formal order of investigation, they're private documents. The only time they would ever be filed publicly would be in the context of a subpoena enforcement action, for example. So that what First Horizon attempts to do is to deconstruct the language of the claim in order to create an ambiguity that works in favor of the insurer as opposed to the insured. I think you have to read that language as being a regulatory administrative proceeding commenced by the filing of a notice of charges. That's one thing. A formal investigative order, which is not a filing and may not be a proceeding or a similar document. That's the 2012-2013 policy. The other policy says the same thing but also invites a written request to interview. A written request to interview is informal, it seems to me. What they were doing was sending civil investigative demands requiring interviews under oath. I spent a long time at the Securities and Exchange Commission and conducted hundreds of investigations. We would send written requests to interview only if there were no formal proceeding. It would be, we'd like to speak to your general counsel. Would that person please come to our offices? Something of that nature. We think that when the CIDs were issued, demanding... You're reading this to say that it had to be a formal administrative or regulatory proceeding. It doesn't say that. It says formal investigative order or similar. I thought the point here was that these civil investigative demands weren't in connection with an administrative or regulatory proceeding. They were in connection with a potential false claims act claim because that's what the civil investigative demand says right on its face. The antitrust manual calls these types of investigations proceedings as did the legislative history in Congress at the time they broadened the scope of CIDs to include FCA investigations. In that context, the government thinks of these investigations as governmental proceedings. What we're looking at is what the language in the policy says, not what the government thinks. The question is, is it a proceeding? If the government thinks it's a proceeding and we're talking about a governmental investigation, I think the governmental determination of what its actions are would carry some weight. In fact, Your Honor, we also believe that First Horizons Counsel and client advisories on two occasions said, if you get a CID, best practice is tell your carrier immediately because if you don't tell your carrier, you can forfeit coverage for defense costs, which could only be paid in the context of a claim. Unless Your Honor has any other questions, thank you for your time. Thank you, Counsel. Your Honor, there's a couple points from Mr. Lemley. First of all, a notice of circumstance, which is what the bank gave in May of 2014, is clear under the policy that's optional. You do not have to give a notice of an expected claim. We did it in the policy period after we thought that there was a potential expected claim. On the April email, even the district court could not find the document itself was a demand on its face. It had to go out and selectively pick two pieces of evidence to the exclusion of all the evidence in the record. It would behoove, I think, the court, as we noted, to look at district court docket 242-4, and then the record page of 795 is the first, and then 245-5, and then beginning at record ID 79-21. Both of those emails, which were right after the April 29 demand, as the insurers argue, do not support the fact that the April email was a demand. And if you take a look at them, you'll see this date on the tolling agreement. The bank were not able to extend beyond June 30th. What the district court left out, and what Mr. Lemley didn't tell you, is that Mr. Fruchter, the government, then said, is that acceptable to your client? If it is, it's okay with us. Mr. Culver, for the bank, said, we'd actually like to go out to June 30th. The very top of the email chain says, okay, that's fine with us. That's hardly any indication that the government is pushing. Going out, go out till June 30th, go out with what? And clearly they're saying, we're going to sue you. There's a tolling agreement in place. They're not saying that they're going to sue, Your Honor, with all due respect. Well, they're saying, we can't put off suing you past this date. Well, they, in fact, but if you look at the totality of the circumstances, Judge Batcholder, and what the court did is selected two. So you're saying, we're not going to sue you at all, so we're for sure not going to sue you before the 30th of June? Is that what you're saying? Exactly. That is what you're saying? That's what the tolling agreement said, but a tolling agreement is not a claim. But I think my point, Your Honor, is if the court was going to You have to be tolling something. I mean, you're tolling a statute of limitations under which you would bring a claim. Correct. There was a tolling agreement, but that's The purpose of the tolling agreement was to continue to engage in settlement discussions, arising out of whatever the April email constitutes, isn't it? Well, it was to continue in discussions. There was a tolling agreement. That was extended three more times, Judge McKeague. But I don't think we can push back the date by which we agreed to file suit beyond June. This was part of the tolling agreement. That was a date for which they said they would forestall bringing any suit against the bank. That in and of itself, looking at the totality of the circumstances, again, the court couldn't find the April email itself to be a claim. It looked at two selected pieces of evidence, and it essentially conducted trial on the paper at summary judgment. If there is an issue about whether or not that April email is a demand, that issue, the entire record should go to the jury in addition to the fact that the notice that was given in both the Wheatley case and the Johnson case, it is clear that you only have to substantially comply with the notice. And the suggestion that the bank, that the insurers didn't see red lights going off when they got a notice saying that there's an $8.2 billion exposure is incredible. And they responded to that by saying we are commencing an investigation and we will give you a coverage evaluation. Your Honors, they did not. They waived that defense. We would ask that you rule as a matter of law that the notice was sufficient. Unless there are any other questions. Thank you.